JANVIER, Judge.
The plaintiff is the widow of William A. Duncan who, more than twenty years ago, died as a result of a 'blow of the fist struck by the defendant, Orey Tanner, in a beer parlor operated by Winfield, commonly known as “Jack” Tanner, the brother of the defendant.
Plaintiff alleges that her husband had been in the said barroom for more than an hour during which time he and his brother, Winfield Tanner, the operator of the bar, had been “skylarking or boxing in the friendliest spirit, when all of a sudden and without any previous warning the defendant, Orey Tanner, who was unknown to your petitioner’s husband, struck your petitioner’s husband a hard or violent blow on the head with his fist and broke the neck of your petitioner’s husband, killing him instantly.”
The defendant answered, denying generally all of the allegations of the petition and especially averring that Duncan, “shortly before midnight,” had come into the beer parlor in a “quarrelsome, boisterous and violent mood, under the influence of liquor,” and that he had created a disturbance and “picked a straw hat off the head of one of the customers and proceeded to kick the same all around the beer parlor, * * * ” that the said Duncan had been asked to leave and had refused to do so; that the defendant had left the beer parlor and on returning saw that the deceased was “clinched with defendant’s brother, Winfield Tanner,” and that the “defendant’s brother appeared to be trying to extricate himself from the clinch,” but “was being securely held by said deceased who was endeavoring to strike defendant’s brother,” and that the defendant “believing that his brother was in grave danger of severe bodily injury and harm, or perhaps death, * * * in defense of the person and life of his said brother struck said William A. Duncan with his fist.”
There was judgment dismissing the plaintiff’s suit. She has appealed.
The matter remained on appeal here for many years, apparently with no effort on the part of counsel for plaintiff to have it placed on the docket for hearing.
In the District Court the testimony was taken before Luther E. Hall, now one of the Judges of the Civil District Court for the Parish of Orleans, then commissioner of the Civil District Court. A study of the record conclusively establishes the correctness of the findings of fact made by the said commissioner from which we shall quote.
“At about 8 P.M. the deceased, accompanied by a friend * * * attended a *687 business meeting” of the church society of which he was President. “The meeting broke up about 9:30 P.M. and the deceased and his friend drove to a beer parlor operated by one Frank Basile * * * where they had a ‘few rounds’ of beer and where on leaving the deceased obtained some boiled shrimp to take home to his wife.” Instead of going home, however, the deceased went to Tanner’s beer parlor operated by a brother of the defendant, commonly called “Jack”. They arrived at Tanner’s beer parlor about midnight and remained there until the deceased was killed about an hour later. “It is undisputed that the deceased and his friend * * * had been drinking beer even before they went to the meeting * * * ” and that “they drank some beer at Basile’s place before going to Tanner’s Beer Parlor, and that they had some more at the latter place.”
The Commissioner found that it could not be determined just how much beer the deceased had drunk during the evening, but that “he had had at least eight or ten ‘6 or 8 ounce’ glasses.”
The Commissioner found from the record that, when the deceased had arrived at the church meeting sometime before going to Tanner’s Beer Parlor, he at that time gave the Pastor the impression that he had been drinking. The Pastor stated that he would not say that he was intoxicated, and that he based his impression that the deceased had been drinking on the way he talked, on the fact that he criticized everything very ■severely and that “even some of the ladies noticed that.” Weber, one of the customers in Tanner’s Beer Parlor whose hat was kicked around by the decedent, said that very obviously Duncan was looking for trouble and that for that reason he left the place before the fatal blow was struck.
The defendant, Orey Tanner, stated that he arrived at his brother’s beer parlor shortly after midnight, and that it was very obvious that the decedent Duncan was “in a belligerent mood,” and that he tried to go behind the bar and was asked to stay out by Jack Tanner; that, after breaking up Weber’s hat, the deceased put it on his head and started singing in a loud voice and that Jack Tanner asked him to stop creating a nuisance and said that “if he didn’t stop he would have to leave” and that the deceased then said “who is going to put me out, go get your big ‘mush’ brother to help you put me out.” The big brother referred to was the defendant, Orey Tanner, who says that he left the place “because it looked like trouble was brewing”; that he drove away and then, thinking that Duncan had left, he returned to his brother’s beer parlor and found “that the deceased was in the middle of the floor shouting.” He says that he again left to go to the toilet and that when he returned to the barroom the deceased “grabbed” his brother by the arm and tried to place it behind his back and that his brother said, “Don’t hit me, Duncan, don’t hit me,” and that he, defendant, then pushed the two apart when Duncan advanced on him with his fist and that he then struck Duncan with the fatal result.
The record leaves no doubt whatever that the decedent was highly intoxicated, that he was very objectionable, that he was anxious to engage in a fight with anyone, and that the defendant, Orey Tanner, was amply justified in believing that his brother was in danger of bodily harm.
The brother, “Jack” Tanner, was a comparatively small man, weighing about 150 pounds and being only 5' 6" or 8" in height, whereas Duncan himself was more than six feet tall and weighed over 200 pounds.
There can be no doubt that the defendant did not intend to kill Duncan and that he thought it necessary to hit him with his fist in his attempt to defend his brother from the attack which seemed to be impending.
Under the circumstances he is not liable for the fatal result. There can be no doubt that he was justified in striking Duncan whether it was in defense of himself or in defense of his brother.
It is well settled that where one who provokes an assault or who is the aggressor in a barroom brawl, such as that which we *688 have discussed, sustains injury, or is even killed as the result of a brawl instigated by him, there can be no recovery.
Had it not been for the unfortunate and unexpected serious result we would not have dignified this barroom brawl by giving it so lengthy a discussion.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.